UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
———————————————————————

KAREN ELIZABETH MULDOWNEY,

                           Plaintiff,

v.                                                          5:17-CV-0352
                                                            (TWD)
COMM'R OF SOC. SEC.,

                           Defendant.
———————————————————————

APPEARANCES:                                     OF COUNSEL:

KAREN ELIZABETH MULDOWNEY
  Plaintiff, *Pro Se*
P.O. Box 786
1510 U.S. Route 11
Tully, NY 13159

U.S. SOCIAL SECURITY ADMIN.                      FERGUS J. KAISER, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza - Room 3904
New York, NY 10278

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## DECISION and ORDER

Currently before the Court, in this Social Security action filed by Karen Elizabeth

Muldowney ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. § 405(g), are Plaintiff's motion for judgment on the

pleadings and Defendant's motion for judgment on the pleadings.  (Dkt. Nos. 18 and 19.)  For

the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied and

Defendant's motion for judgment on the pleadings is granted.  The Commissioner's decision

denying Plaintiff's disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born in 1962, making her 50 years old at the alleged onset date and 53 years old at the ALJ's decision.  She reported obtaining a Bachelor's degree in computer science and an Associate's degree in nursing.  Her past work includes registered nursing and telephonic nurse consultant.  At the initial application level, Plaintiff alleged disability due to post-concussion syndrome, myofascial pain syndrome, depression, anxiety, back and neck injuries, bipolar disorder, and borderline personality disorder.

### B.    Procedural History

Plaintiff applied for a period of disability and Disability Insurance Benefits on July 10, 2013, alleging disability beginning October 4, 2012.  Her application was initially denied on October 18, 2013, after which she timely requested a hearing before an Administrative Law Judge ("ALJ").  She appeared at a hearing before ALJ Lisa B. Martin on April 8, 2015.  On September 10, 2015, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.  (T. 7-33.[1])  On January 31, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)

### C.    The ALJ's Decision

In her decision, the ALJ made the following seven findings of fact and conclusions of law.  (T. 12-26.)  First, the ALJ found Plaintiff meets the insured status requirements of the

---

[1]    The Administrative Transcript is found at Dkt. No. 9.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

Social Security Act through December 31, 2018.[2]  (T. 12.)  Second, the ALJ determined she has

not engaged in substantial gainful activity since her alleged onset date of October 4, 2012.  (*Id.*)

Third, the ALJ found Plaintiff's bilateral shoulder disorder status-post surgical repair, cervical

and lumbar spine disorders, post-concussion syndrome, diabetes, obesity, and depression are

severe impairments.  (T. 12-13.)  Fourth, the ALJ determined she does not have an impairment or

combination of impairments that meets or medically equals one of the listed impairments in 20

C.F.R. § 404, Subpart P, App. 1 (the "Listings").  (T. 13-15.)  The ALJ considered Listings 1.02

(major dysfunction of a joint), 1.04 (disorders of the spine), 12.02 (organic mental disorders),

and 12.04 (affective disorders).  (*Id.*)  Fifth, the ALJ found Plaintiff has the residual functional

capacity ("RFC") to perform a full range of light work except

> the claimant needs a brief one-to-two-minute period to change
> positions or sit down as often as every 30-to-45 minutes in addition
> to normal work breaks.  The claimant must not perform climbing of
> ladders, ropes, or scaffolds, and is otherwise limited to occasional
> performance of all other postural motions.  The claimant must not
> perform overhead reaching tasks with the upper extremities.  The
> claimant is limited to frequent, but not constant, upper extremity
> reaching and handling.  The claimant must not be exposed to
> dangerous work hazards, including unprotected heights and exposed
> machinery.  Because of cognitive and mental health issues
> preventing detailed work tasks and fast-paced work, the claimant is
> limited to routine, simple tasks requiring little or no change in job
> duties and not involving a fast assembly quota pace.

(T. 15.)  Sixth, the ALJ determined Plaintiff is unable to perform any past relevant work.  (T.

24.)  Lastly, the ALJ concluded there are jobs existing in significant numbers in the national

economy which Plaintiff can perform and therefore Plaintiff is not disabled.  (T. 25-26.)

---

[2]      The Court notes that, elsewhere in the record, it is indicated Plaintiff's date last insured
was December 31, 2017, but based on the Court's review, the ALJ is correct.  (T. 70, 165, 196.)

**D.**     **The Parties' Briefings on Their Cross-Motions**

**1.**     **Plaintiff's Motion for Judgment on the Pleadings**

Plaintiff, appearing *pro se* in this action, filed a brief alleging brain damage and severe anxiety with panic attacks.  (Dkt. No. 18 at 1-9.[3])  Plaintiff attached medical evidence not previously entered in the record to her memorandum of law as Exhibits 1 through 11.  (*Id*. at 4-41.)

Plaintiff makes three arguments in support of her motion for judgment on the pleadings. First, Plaintiff asserts she has new and material evidence which makes the decision of the ALJ contrary to the weight of all the evidence in the record.  (*Id*. at 2-3.)  Plaintiff indicates she told her attorney she had additional medical evidence and he told her that it could not be submitted. (*Id*. at 3.)  Second, Plaintiff argues the two independent medical exams she submitted should be afforded great weight.  (*Id*. at 3-4.)  Third, Plaintiff contends she meets the criteria of paragraph B of Listing 12.02 and/or Listing 12.04 in that she has marked difficulties in maintaining social functioning and marked difficulties in maintaining concentration, persistence, or pace.  (*Id*. at 4-8.)  In support, she points to a behavioral functional ability form completed by her primary care provider on June 17, 2016, indicating marked limitations.  (*Id*. at 4-5, 39-41.)

**2.**     **Defendant's Motion for Judgment on the Pleadings**

Defendant makes two arguments in support of her motion for judgment on the pleadings. (Dkt. No. 19 at 10-17.)  First, Defendant contends the new evidence submitted with Plaintiff's memorandum of law to this Court does not require remand.  (*Id*. at 10-14.)  Specifically, Defendant asserts (a) none of the MRI reports submitted by Plaintiff with her memorandum of

---

[3]     Page numbers in citations to the parties' briefs refer to the page number assigned by the Court's CM/ECF electronic filing system.

law are from the relevant period and thus have no bearing on her functionality during the relevant period, (b) the examining doctors who authored these reports failed to state that their findings related back to the relevant period and they did not initially examine Plaintiff until well after the relevant period expired, (c) the new evidence submitted by Plaintiff merely documents the presence of certain conditions but does nothing to support her claims of disability, (d) the reports of both consultative examiners Kalyani Ganesh, M.D., and Elke Lorensen, M.D., are consistent with the ALJ's RFC determination for a range of light work, and (d) Plaintiff fails to offer good cause for her failure to present the evidence earlier.  (*Id*. at 11, 13-14.)  Defendant also contends the only piece of new evidence submitted by Plaintiff with any connection to the relevant period is the July 2015 examination report from Bradley Wiener, M.D., but it is immaterial to the question of disability because it provides no opinion on Plaintiff's functionality.  (*Id*. at 12, 14.)  Rather, it speaks to an issue reserved to the Commissioner.  (*Id*.) Defendant additionally argues (a) while Dr. Wiener documented Plaintiff's own reports of pain and reduced range of motion, a claimant's own subjective complaints or other symptoms are insufficient to establish a disability, and (b) Dr. Wiener's findings on examination and his documentation of objective tests and previous reports from other physicians showing various conditions are consistent with the ALJ's determination that Plaintiff could perform a reduced range of light work.  (*Id*. at 13.)

Second, Defendant asserts the ALJ's Step Three determination is supported by substantial evidence.  (*Id*. at 14-16.)  Defendant contends the ALJ, while citing to the objective medical evidence, correctly found Plaintiff had only mild difficulties in activities of daily living and social functioning, moderate difficulties in concentration, persistence and pace, and no episodes of decompensation of extended duration.  (*Id*. at 15-16.)  Defendant points out the ALJ noted

Plaintiff had no difficulties handling her finances, was able to read and watch television, drive, and complete her son's tax return for him.  (*Id.*)  Defendant also cites to the opinion of consultative examiner Christina Caldwell, Ph.D., indicating that Plaintiff had no limitations in following and understanding simple directions and instructions, maintaining attention or concentration, or maintaining a regular schedule, and had only moderate limitations in the abilities to make appropriate decisions, relate adequately with others, and appropriately deal with stress.  (*Id.* at 16.)

## II.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational

interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685

F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining evidence from both sides,

because an analysis of the substantiality of the evidence must also include that which detracts

from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by

substantial evidence, the Commissioner's finding must be sustained "even where substantial

evidence may support the plaintiff's position and despite that the court's independent analysis of

the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153

(S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination

considerable deference, and may not substitute "its own judgment for that of the

[Commissioner], even if it might justifiably have reached a different result upon a *de novo*

review."  *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.    Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an

individual is disabled as defined by the Social Security Act.  20 C.F.R. §§ 404.1520, 416.920.

The Supreme Court has recognized the validity of this sequential evaluation process.  *Bowen v.*

*Yuckert*, 482 U.S. 137, 140-42 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity.  If he is not, the
> [Commissioner] next considers whether the claimant has a "severe
> impairment" which significantly limits his physical or mental ability
> to do basic work activities.  If the claimant suffers such an
> impairment, the third inquiry is whether, based solely on medical
> evidence, the claimant has an impairment which is listed in
> Appendix 1 of the regulations.  If the claimant has such an
> impairment, the [Commissioner] will consider him disabled without
> considering vocational factors such as age, education, and work

> experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III.   ANALYSIS

### A.   New Evidence Submitted by Plaintiff Does Not Require Remand

"Generally, 'evidence not contained in the administrative record may not be considered [by a district court] when reviewing the findings of the Commissioner.'" *Trombley v. Colvin*, 15-CV-0567 (TWD), 2016 WL 5394723, at *10 (N.D.N.Y. Sept. 27, 2016) (quoting *Collins v. Comm'r of Soc. Sec.*, 960 F. Supp. 2d 487, 500 (S.D.N.Y. 2013) (internal citations omitted). However, the reviewing court may "remand the claim to the Agency for consideration of evidence that is not contained in the administrative record 'upon a showing that there is new evidence which is material and that there [was] good cause for the failure to incorporate such evidence' into the administrative record." *Id.* (quoting 42 U.S.C. § 405(g) (sentence six); citing *Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir. 1991) (claimant must show good cause for failure to present evidence earlier)).

Plaintiff argues the exhibits she provided constitute new and material evidence which make the ALJ's decision contrary to the weight of all the evidence in the record. (Dkt. No. 18 at

2-3.)  She told her attorney she had additional medical evidence and he told her it could not be submitted.  *Id.*  To be material, the evidence must be both probative and relevant to the plaintiff's condition during the alleged period of disability.  *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004).  Much of the evidence submitted by Plaintiff with her brief pre-dates her alleged onset date by more than five years or post-dates the ALJ's decision by more than six months.  (Dkt. No. 18 at 12-20, 30-41.)  As argued by Defendant, the only piece of new evidence submitted by Plaintiff pertinent to relevant period between her alleged onset date and the ALJ's decision is the July 2015 independent medical examination report from Dr. Wiener which Plaintiff argues should carry great weight.  (Dkt. No. 19 at 10-14.)

The Court finds Plaintiff, who was represented by counsel in the administrative proceedings, has not satisfied the statutory requirement to show good cause for failure to incorporate Dr. Wiener's examination and opinion into the prior proceedings.  (T. 39, 349-50.) The Court further finds that, even if Plaintiff had shown good cause for the delay in submitting the opinion, information in Dr. Wiener's opinion is not material to the determination of Plaintiff's RFC by the ALJ.  While Dr. Wiener's opinion relates to Plaintiff's condition during the period of alleged disability, "the concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently."  *Id.*  Dr. Wiener's opinion that Plaintiff was permanently disabled and incapable of working as a registered nurse in a full-duty capacity touches on an issue reserved to the Commissioner; and it is unlikely to have changed the ALJ's analysis of the opinion evidence or overall disability determination particularly because the ALJ found that Plaintiff could not perform her past work as a nurse, but could perform other work in the national economy.  (*Id.*;

20 C.F.R. § 404.1527(e); T. 24-26; Dkt. No. 18 at 28.)  Therefore, the Court finds the evidence

submitted by Plaintiff, including Dr. Wiener's opinion, does not require remand.

**B.    Substantial Evidence Supports the ALJ's Finding that Plaintiff Does Not Have an Impairment or Combination of Impairments that Meets or Medically Equals a Listed Impairment**

"Plaintiff has the burden of proof at step three to show that her impairments meet or

medically equal a Listing." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 272 (N.D.N.Y. 2009)

(citing *Naegele v. Barnhart*, 433 F. Supp. 2d 319, 324 (W.D.N.Y. 2006)).  "To meet a Listing,

Plaintiff must show that her medically determinable impairment satisfies all of the specified

criteria in a Listing." *Id.* (citing 20 C.F.R. § 404.1525(d)).  "If a claimant's impairment

'manifests only some of those criteria, no matter how severely,' such impairment does not

qualify." *Id*. (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)).  Additionally, a court may

be able to uphold an ALJ's finding that a claimant does not meet a Listing even where the

decision lacks an express rationale for that finding if the determination is supported by

substantial evidence.  *Rockwood*, 614 F. Supp. 2d at 273 (citing *Berry v. Schweiker*, 675 F.2d

464, 468 (2d Cir. 1982)).

Here, the ALJ found Plaintiff did not have an impairment or combination of impairments

that meets or medically equals the severity of a listed impairment and specifically considered

Listings 1.02, 1.04, 12.02, and 12.04.  (T. 13-15.)  The ALJ also determined Plaintiff has mild

restriction in activities of daily living, mild difficulties in social functioning, and moderate

difficulties in concentration, persistence or pace.  (T. 14-15.)  Plaintiff argues she meets the

criteria of paragraph B in Listing 12.02 and/or Listing 12.04 in that she has marked difficulties in

maintaining social functioning and marked difficulties in maintaining concentration, persistence,

or pace pointing to a June 2016 assessment from her primary care provider indicating marked limitations.  (Dkt. No. 18 at 4-8, 39-41.)  The Court finds this argument unpersuasive.

In considering Plaintiff's mental impairments and limitations, the ALJ afforded significant weight to the opinions of Drs. Caldwell and Reddy and included mental limitations in the RFC.  (T. 15, 21, 24, 77, 82, 535.)  Plaintiff points to a June 2016 assessment from her primary care provider to support her argument that she has marked limitations and also provides a May 2016 independent psychiatric examination.  (Dkt. No. 18 at 4-8, 30-36, 39-41.)  However, both of these assessments post-date the ALJ's decision by more than six months and are not part of the record, as discussed in Part III.A. above.  Plaintiff has not persuasively pointed to any evidence in the record that would undermine the ALJ's finding.

In considering whether the ALJ erred in determining that Plaintiff's impairments do not meet a listing, the Court declines any invitation by Plaintiff to reweigh that evidence or the evidence she has submitted with her brief.  *See Warren v. Comm'r of Soc. Sec.*, 15-CV-1185 (GTS/WBC), 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18, 2016) ("When applying the substantial evidence test to a finding that a plaintiff was not disabled, the Court 'will not reweigh the evidence presented at the administrative hearing . . . nor will it determine whether [the applicant] actually was disabled.  [Rather], [a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is substantial evidence [in the record] to support it.'") (quoting *Lefford v. McCall*, 916 F. Supp. 150, 155 (N.D.N.Y. 1996)), *Report and Recommendation adopted by* 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016); *see also Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir.

1983)).  Rather, because the ALJ has provided reasons and a discussion of evidence to show her findings are supported by substantial evidence, this Court is obliged to accept those findings.

Thus, the Court finds substantial evidence supports the ALJ's finding that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  *See Lewis v. Colvin*, 122 F. Supp. 3d 1, 7 (N.D.N.Y. 2015) (noting that it is not the role of a court to "re-weigh evidence" because "a reviewing court 'defers to the Commissioner's resolution of conflicting evidence' where that resolution is supported by substantial evidence") (quoting *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012); citing *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009)).  Remand is therefore not required on this basis.

**C.    Substantial Evidence Supports the ALJ's Analysis of the Opinion Evidence and Plaintiff's RFC**

The Second Circuit has long recognized the "treating physician rule" set out in 20 C.F.R. § 404.1527(c).  "[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'"  *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).  However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist."  *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)).  The factors for considering opinions from non-treating medical sources are the same as those for assessing

treating sources, with the consideration of whether the source examined the claimant or not

replacing the consideration of the treatment relationship between the source and the claimant.  20

C.F.R. §§ 404.1527(c)(1)-(6).

RFC is defined as "what an individual can still do despite his or her limitations[.]

Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in

an ordinary work setting on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d

200, 210 (N.D.N.Y. 2009) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)).  "In

making a residual functional capacity determination, the ALJ must consider a claimant's

physical abilities, mental abilities, symptomology, including pain and other limitations which

could interfere with work activities on a regular and continuing basis." *Pardee*, 631 F. Supp. 2d

at 210 (citing 20 C.F.R. § 404.1545(a)).  "Ultimately, '[a]ny impairment-related limitations

created by an individual's response to demands of work . . . must be reflected in the RFC

assessment.'" *Hendrickson v. Astrue*, 11-CV-0927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y.

Dec. 11, 2012) (quoting Social Security Ruling ("SSR") 85-15, 1985 WL 56857, at *8).

"An ALJ should consider 'all medical opinions received regarding the claimant.'" *Reider

v. Colvin*, 15-CV-6517, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting *Spielberg

v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005)).  "The ALJ is not permitted to substitute

his own expertise or view of the medical proof for the treating physician's opinion or for any

competent medical opinion." *Greek*, 802 F.3d at 375 (citing *Burgess*, 537 F.3d at 131).  In

assessing a plaintiff's RFC, an ALJ is entitled to rely on opinions from both examining and non-

examining State agency medical consultants because these consultants are qualified experts in

the field of social security disability. *See Frey ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d

Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert

opinion evidence which can be given weight if supported by medical evidence in the record.");

*Little v. Colvin*, 14-CV-0063 (MAD), 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015)

("State agency physicians are qualified as experts in the evaluation of medical issues in disability

claims.  As such, their opinions may constitute substantial evidence if they are consistent with

the record as a whole.") (internal quotation marks omitted).  The RFC determination "must be set

forth with sufficient specificity to enable [the Court] to decide whether the determination is

supported by substantial evidence."  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

Here, the ALJ considered the opinions of consultative examiner Dr. Ganesh, independent

orthopedic examiner Richard Mutty, M.D., consultative examiner Dr. Lorensen, consultative

examiner Dr. Caldwell, Plaintiff's primary care physician James Edinger, M.D., her pain

management specialist Saad Sobhy, M.D., and State Agency psychological consultant V. Reddy,

PhD.  (T. 17-24.)  The ALJ afforded little weight to Dr. Ganesh's opinion that Plaintiff has no

gross physical limitations pertaining to sitting, standing or walking and some weight to Dr.

Ganesh's indication that Plaintiff has mild limitations in lifting, carrying, pushing and pulling.

(T. 18.)  The ALJ explained Plaintiff weighed 257 pounds upon examination and had a history of

neck and lower back pain, and noted Dr. Ganesh's indication of "mild" limitations was vague.

(T. 18, 543.)  The ALJ afforded little weight to Dr. Mutty's opinion that Plaintiff was limited to

sedentary activity because it was not supported by Dr. Mutty's own examination, but afforded

great weight to Dr. Mutty's opinion that Plaintiff would need to change her position frequently,

which the ALJ indicated was supported by Plaintiff's hearing testimony.  (T. 19, 61-62, 67-70,

580-82.)

Dr. Lorensen noted there were no gross neurological deficits identified on examination

and opined that Plaintiff has no gross limitations in sitting, standing, walking, or handling small

14

objects with the hands and mild to moderate restriction in turning the head sideways, bending, lifting, and reaching. (T. 705.) She further opined Plaintiff could frequently lift/carry up to ten pounds and occasionally lift/carry up to twenty pounds; sit for eight hours at a time for eight hours per workday; stand for two hours at a time for a total of four hours; walk one hour at a time for a total of two hours; occasionally reach and push/pull; occasionally operate foot controls; never climb or balance; occasionally stoop, kneel, crouch, and crawl; never be exposed to unprotected heights or moving mechanical parts; and can occasionally operate a motor vehicle, be exposed to humidity, wetness, pulmonary irritants, extreme heat and cold, and vibrations. (T. 706-11.) The ALJ afforded great weight to Dr. Lorensen's opinion because it was formulated after a comprehensive neurological examination and was the most recent examination and opinion of Plaintiff's functioning. (T. 19.)

Dr. Caldwell noted Plaintiff reported mild to moderate limitations in the ability to perform simple tasks independently and moderate limitations in the ability to perform complex tasks independently and learn new tasks. (T. 535.) Dr. Caldwell opined that Plaintiff did not evidence limitations in the ability to follow and understand simple directions and instructions, maintain attention and concentration, or maintain a regular schedule and that Plaintiff evidenced moderate limitations in the ability to make appropriate decisions, relate adequately with others, and appropriately deal with stress. (*Id.*) The ALJ afforded significant weight to Dr. Caldwell's opinion because it was formulated after a comprehensive psychological examination and was consistent with the medical evidence of record and Plaintiff's hearing testimony. (T. 21.)

In April 2012, Dr. Edinger opined Plaintiff could stand, walk, and sit for eight hours out of an eight-hour workday but could never use the right upper extremity for any lifting, carrying or reaching. (T. 383-84.) The ALJ afforded this opinion little weight because, although Dr.

15

Edinger was a treating source with a longitudinal treatment history with Plaintiff, this opinion was formulated prior to the alleged onset date and prior to Plaintiff's bilateral shoulder surgeries. (T. 23.)

In March 2015, Dr. Edinger opined Plaintiff can sit for one hour or less per day, stand/walk one hour or less, and needs to get up and move around every 30 minutes; can climb, balance, stoop, kneel, crouch, and crawl for one hour or less per day; can occasionally lift/carry up to ten pounds; and has marked limitations in turning and twisting objects bilaterally, using the bilateral fingers/hands for fine manipulation, and using the bilateral arms for reaching. (T. 692-94.) Dr. Edinger also opined Plaintiff's symptoms are likely to increase if in a competitive work setting. (T. 694.) She cannot do a full time competitive job requiring activity on a sustained basis; her symptoms are constantly severe enough to interfere with attention and concentration; she is incapable of tolerating even low work stress; she would need to take unscheduled breaks 12-15 times during a workday for 15 minutes; she is likely to be absent more than three times per month; and she should avoid temperature extremes, humidity, heights, and noise. (T. 694-96.) The ALJ afforded little weight to this opinion. (T. 22-23.) While Dr. Edinger is a treating source with a longitudinal treatment history with Plaintiff, (a) his treatment notes do not support this degree of disability, (b) there was very little support in the record for the opinion that Plaintiff could sit, stand, and walk for less than one hour per day, (c) Plaintiff admitted she is on the computer for an hour or two per day, (d) she had no problem sitting at the administrative hearing which lasted almost one full hour, (e) Plaintiff admitted at the hearing that her cognitive problems affect her more than her physical problems, and (f) when asked if she could sit for longer periods with breaks, she testified that she thought she would be capable of doing that. (T. 22-23, 59, 62-64, 251.)

16

Dr. Sobhy submitted multiple progress reports/opinions in the Workers' Compensation process pertaining to Plaintiff's functioning and level of disability between July 2012 and August 2015, each time opining extreme restrictions and indicating 75-100 percent temporary impairment for Workers' Compensation purposes due to various conditions including post-concussion syndrome, chronic pain, and cervical/lumbar radiculitis.  (T. 549-76, 716, 719, 723, 725.)  The ALJ afforded these opinions little weight, noting (a) Plaintiff described activities of daily living in excess of the opined restrictions, including driving, using the computer, and attending church, (b) the opinions, although by a treating source, were conclusory and not supported by sustained findings, and (c) the final issue of disability is an issue reserved to the Commissioner.  (T. 23, 57-61, 251-53.)

Dr. Reddy opined Plaintiff has mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace, no repeated episodes of decompensation, each of extended duration.  (T. 77.)  Dr. Reddy also opined Plaintiff is able to understand, execute and remember only simple instructions and work-like procedures, maintain attention and concentration for at least two hour intervals, sustain a normal workday and work week, maintain a consistent pace, respond to supervisors and coworkers appropriately, adapt to changes in a routine work setting, and use judgment to make simple work-related decisions and that she would have no difficulty in dealing with the public.  (T. 82.)  The ALJ afforded significant weight to Dr. Reddy's opinion because it is consistent with the medical evidence of record which was available to Dr. Reddy and with subsequently received medical evidence, particularly the neurological consultative examination.  (T. 23-24, 702-05.)

17

In considering the opinion evidence, the ALJ was entitled to resolve the evidentiary conflicts before her in determining the RFC and relying on those opinions to which she afforded significant weight. *See Bliss v. Colvin*, 13-CV-1086 (GLS/CFH), 2015 WL 457643, at *7 (N.D.N.Y. Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *accord Petell v. Comm'r of Soc. Sec.*, 12-CV-1596 (LEK/CFH), 2014 WL 1123477, at *10 (N.D.N.Y. Mar. 21, 2014). It is clear from the ALJ's analysis that she adequately considered the regulatory factors when assessing the opinions of record including the consistency of the opinions with the medical evidence and Plaintiff's testimony. 20 C.F.R. §§ 404.1527(c)(1)-(6). In particular, the ALJ provided good reasons for affording less weight to the opinions from Plaintiff's treating physicians in accordance with the Regulations. In providing sufficient explanation for the weight afforded to each opinion, the ALJ's decision enables this Court to conduct meaningful review and conclude that the ALJ's analysis and resulting RFC are supported by substantial evidence. *See Booker v. Astrue*, 07-CV-0646 (GLS), 2011 WL 3735808, at *5 (N.D.N.Y. Aug 24, 2011) ("The crucial factors in an ALJ's decision must be set forth in sufficient detail as to enable meaningful review by the court.") (citing *Ferraris*, 728 F.2d at 587); *Hickman ex rel. M.A.H. v. Astrue*, 728 F. Supp. 2d 168, 173 (N.D.N.Y. 2010) ("The ALJ must 'build an accurate and logical bridge from the evidence to [his] conclusion to enable a meaningful review.'") (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)). Remand is therefore not required on this basis.

The Court notes Plaintiff argues that the two independent medical exams she submitted with her memorandum of law should carry great weight. (Dkt. No. 18 at 3-4.) However, because both of these examinations were not before the ALJ at the time of her decision and were

not submitted to the Appeals Council for review, the Court does not consider them for purposes of assessing the support for the RFC.  *Trombley*, 2016 WL 5394723, at *10.

### D.    Substantial Evidence Supports the Credibility Determination

In determining whether a claimant is disabled, the ALJ must also make a determination as to the credibility of the claimant's allegations.  "An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence."  *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 205 (N.D.N.Y. 2012) (quoting *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)).  The Second Circuit recognizes that "'[i]t is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant,'" and that, "[i]f there is substantial evidence in the record to support the Commissioner's findings, 'the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain.'" *Schlichting*, 11 F. Supp. 3d at 206 (quoting *Carroll*, 705 F.2d at 642); *Aponte v. Sec'y, Dep't of Health and Human Servs*., 728 F.2d 588, 591 (2d Cir. 1984)).  Due to the fact that the ALJ has the benefit of directly observing a claimant's demeanor and "other indicia of credibility," the ALJ's credibility assessment is generally entitled to deference.  *Weather v. Astrue*, 32 F. Supp. 3d 363, 381 (N.D.N.Y. 2012) (citing *Tejada v. Apfel*, 167 F.3d 770, 776 (2d Cir. 1999)).

Here, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were "fairly credible."  (T. 21-22.)  The ALJ noted Plaintiff appeared to sustain good attention and concentration during the administrative hearing.  (T. 22.)  Despite Plaintiff's memory and concentration deficits, she testified she did her son's taxes and

uses a computer to check her bank accounts. (T. 57, 59-70.) Regarding Plaintiff's physical impairments, the ALJ pointed out (a) the surgery on her shoulders improved her pain despite the medical evidence showing some lingering range of motion issues, (b) her lumbar and cervical spine pain has required mostly conservative treatment, (c) she has not had an MRI on her back nor required surgery, (d) her diabetes appears to be recently diagnosed with no specific limitations, and (e) she is able to attend church regularly, drive two-to-three times per week, and use the computer for an hour per day. (T. 22, 50-51, 57-60, 251, 254-54, 702-03.)

Although neither Plaintiff nor Defendant addresses the credibility determination in their briefs, the Court has reviewed the ALJ's decision, including the credibility assessment, and the entire record and finds the determination is supported by substantial evidence. The ALJ's credibility analysis and overall decision indicate an adequate consideration of the regulatory factors including Plaintiff's symptoms, treatment, and daily activities. Remand is therefore not required on this basis.

### E.    Substantial Evidence Supports the Step Five Determination

The burden shifts to the Commissioner at Step Five "to show there is other work that [the claimant] can perform." *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)). "If a claimant has non-exertional limitations that 'significantly limit the range of work permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert." *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (quoting *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986)). "However, the 'mere existence of a non-exertional impairment does not automatically . . . preclude reliance on the [Medical-Vocational] guidelines.'" *Zabala*, 595 F.3d at 410-11 (quoting *Bapp*, 802 F.2d at 603). "A non-exertional impairment 'significantly limits a claimant's range of work when it causes an

additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" *Zabala*, 595 F.3d at 410-11 (quoting *Bapp*, 802 F.2d at 605-06).

Here, the ALJ found Plaintiff can perform other jobs existing in significant numbers in the national economy including price marker, small parts assembler, and routing clerk based on the vocational expert ("VE") testimony which was in response to a hypothetical question including the limitations in the ALJ's RFC determination.  (T. 25-26, 65-68.)  Although neither Plaintiff nor Defendant addresses the ALJ's ultimate Step Five determination in their briefs, as indicated above, the Court has reviewed the ALJ's decision, including the Step Five determination based on the VE testimony, and the entire record and finds the determination is supported by substantial evidence.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 18) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 19) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**, and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.


Dated: May 29, 2018
        Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

21